**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| REGINALD LEE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1112-CR-1127 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1107-FB-50123

**August 21, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Reginald Lee (Lee), appeals his conviction for Count I, robbery, a Class B felony, Ind. Code § 35-42-5-1; and Count III, auto theft, a Class D felony, I.C. § 35-43-4-2.5.

We affirm.

## ISSUE

Lee raises one issue on appeal which we restate as: Whether the State presented sufficient evidence to support Lee's conviction of robbery, a Class B felony.

## FACTS AND PROCEDURAL HISTORY

On July 14, 2011, Chad Closser (Closser) made plans to meet a woman known as Day-Day that he had recently met and had been communicating with over the internet. Before their meeting, Day-Day informed Closser that she was in need of seventy dollars. On his way to meet Day-Day, Closser stopped at the bank and withdrew five hundred fifty dollars. He removed fifty dollars and added it to the twenty dollars he already had in his wallet. Closser put the remaining five hundred dollars in an envelope. Upon reaching Day-Day's residence, Closser placed the envelope under the floor mat of his vehicle.

Closser went inside Day-Day's apartment and the two of them both began talking and smoking marijuana together. After about thirty to forty-five minutes, two men, Ronald Brown (Brown) and Lee entered Day-Day's apartment. Closser became

2

uncomfortable with the two men's presence and decided to leave. As Closser made an effort to leave, Brown grabbed him from behind and attempted to pull him back toward the kitchen. Closser hung onto the doorknob of the front door in an attempt to escape Day-Day's apartment. Brown struck Closser in the face several times, forcing him to release the door, and dragged him back into the apartment. While being pulled back into the apartment, Closser heard a male voice he believed to be someone other than Brown's say, "pull him back in here." (Tr. 34, 35). Lee then instructed Closser to, "give me your money." (Tr. 37). Closser was ordered by the two men to give up his money, keys, wallet and cell phone. He removed his car keys and wallet and threw it on the floor but kept his cell phone in his pocket. After he had emptied his pockets, Brown and Lee ordered Closser to leave Day-Day's apartment.

Closser walked down the road after leaving Day-Day's apartment and called the police on his cell phone. Police Officer Gerald Neumann (Officer Neumann) met Closser about twenty minutes after the incident and took his statement. Officer Neumann then drove Closser back to the apartment complex but his car was no longer there. Closser realized that his car had a GPS tracking system and contacted his dealer who subsequently located the car using the tracking system. The dealer reported the car's location to the police and the police found Closser's car parked at a gas station along with Brown, Lee, and two female occupants. A detective took Closser to the gas station where he identified Lee and Brown and discovered that the five hundred dollars he had left in an

3

envelope under his floor mat was gone. The police searched Lee and found five hundred seventy dollars in his front pocket. The police also recovered latent fingerprints from the driver's side door which were later determined to be Lee's fingerprints.

On July 18, 2011, the State filed an Information charging Lee with Count I, robbery, a Class B felony, I.C. § 35-42-5-1; Count II, criminal confinement, a Class C felony, I.C. § 35-42-3-3, and Count III, auto theft, a Class D felony, I.C. § 35-43-4-2.5. On October 31, 2011 through November 1, 2011, a jury trial was conducted. Lee was acquitted on Count II, but convicted on Counts I and III. On November 17, 2011 a sentencing hearing was held and the trial court sentenced Lee to fourteen years executed on Count I, with one year suspended and two years executed on Count III, with his sentences to be served concurrently at the Department of Correction.

Lee now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Lee contends that the State failed to present sufficient evidence to support his robbery conviction.[1] Specifically, Lee argues that he did not inflict any bodily injury to Closser and therefore his conviction should be reduced from a Class B felony to a Class C felony. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh the evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the evidence supporting the

---

[1] Lee does not contest the sufficiency of his conviction for auto theft.

4

judgment and any reasonable inferences that can be drawn from such evidence. *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*. It is the fact-finder's role, not that of the appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Evidence is insufficient for a conviction when no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *Clark v. State*, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).

A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Class C felony. I.C. § 35-42-5-1. However, the offense becomes a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant. I.C. § 35-42-5-1. Bodily injury as used in the robbery statute means any impairment of physical condition including physical pain. *Woods v. State*, 460 N.E.2d 503, 505 (Ind. 1984). Thus, to convict Lee of a Class B felony robbery as charged, the State was required to prove that Lee knowingly took property from Closser by putting him in fear or by using or threatening the use of force and the offense resulted in bodily injury to Closser.

Although Lee concedes that he was present and participated in the robbery, he denies inflicting any bodily injury. Rather, he argues that his co-defendant, Brown, inflicted bodily injury on Closser and his mere participation in the robbery did not elevate the offense to a Class B felony. This argument fails. The trial court instructed the jury that Lee could be found guilty of robbery as an accomplice. Pursuant to the accomplice liability doctrine, a co-defendant will be equally responsible for any bodily injury inflicted on a victim even if he did not actually inflict the injury. Indiana Code section 35-41-2-4 provides that a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense. *Wright v. State*, 950 N.E.2d 365, 368 (Ind. Ct. App. 2011). In determining whether a person aided another in the commission of a crime, our supreme court has long considered the following four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. *Garland v. State*, 788 N.E.2d 425, 431 (Ind. 2003).

Where two people act in concert to commit a crime, each may be charged as a principal in all acts committed by the accomplice in the accomplishment of the crime. *Smith v. State*, 809 N.E.2d 938, 944 (Ind. Ct. App. 2004), *trans.denied.* A defendant may be convicted as an accomplice where he merely had a tangential involvement in the

6

crime. *Green v. State*, 937, N.E.2d 923, 929 (Ind. Ct. App. 2010), *trans. denied.* The responsibility for any bodily injury which occurs during the commission or attempted commission of a robbery rests on the perpetrators of the crime, regardless of who inflicts the injury, so long as it is a natural and probable consequence of the events and circumstances surrounding the robbery or attempt. *Moon v. State*, 419 N.E.2d 740, 741-742 (Ind. 1981).

Applying the factors set out in *Garland*, we consider whether Lee was present at the scene of the crime; his companionship with his co-defendant Brown, who was engaged in the criminal activity; Lee's failure to oppose Brown's actions; and his conduct before, during, and after the crime. *See Garland*, 788 N.E.2d at 431. Closser witnessed Lee and Brown enter Day-Day's apartment together. Closser testified at trial that Lee and Brown entered Day-Day's apartment while they were smoking and Lee was present during the time of the robbery. Lee helped Brown strip Closser of his possessions, and the police testified that Lee was found with Brown along with Closser's stolen vehicle. When Closser attempted to leave, Lee did not oppose Brown's actions when Brown pulled Closser back into the apartment and began striking Closser in the face. Closser testified that Lee ordered him to give them his money, keys, wallet, and cell phone; then both Lee and Brown ordered Closser to leave the apartment. Officers testified at trial, that once they located Closser's vehicle, Lee and Brown were found with the vehicle and Brown was in possession of Closser's social security card and driver's license. One

7

Officer testified that after searching Lee he found the five hundred seventy dollars that was stolen from Closser's wallet and vehicle in Lee's left front pocket. Based on the facts above, we conclude that although Lee did not physically injure Closser, his collective participation in the robbery made him equally responsible for any bodily injuries suffered by Closser.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to support Lee's conviction of robbery, a Class B felony.

Affirmed.

BAILEY, J. and CRONE, J. concur